UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| VODIE GOODMAN, | ) |
| Movant, | ) |
| v. | ) |
| | ) Crim. No. 07-28-P-H |
| UNITED STATES OF AMERICA, | ) Civ. No. 10-413-P-H |
| Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Vodie Goodman was convicted on November 28, 2007, on federal drug and firearm charges after he pled guilty and is currently serving a 322-month combined sentence. Goodman filed an unsuccessful direct appeal and on October 5, 2009, the United States Supreme Court denied his petition for a writ of certiorari. Goodman v. United States, 130 S. Ct. 185 (Oct. 5, 2009). Goodman now seeks 28 U.S.C. § 2255 collateral relief, advancing three ineffective assistance of counsel grounds. I have screened his motion pursuant to Rule Governing Section 2255 Proceedings 4(b) and now recommend that the Court deny Goodman § 2255 relief because it plainly appears from the motion, his memorandum, and the record of the prior proceedings that Goodman is not entitled to § 2255 relief.[1]

*Discussion*

**Section 2255 Review and the Ineffective Assistance of Counsel Standard**

Ineffective assistance of counsel claims are the bread and butter of 28 U.S.C. § 2255 proceedings and Strickland v. Washington, 466 U.S. 668 (1984) governs the resolution of Goodman's three Sixth Amendment claims. "In order to prevail, a defendant must show both

---

[1] Goodman will have a chance to object to this recommended decision, thereby alleviating concerns about the abruptness of a Rule 4(b) screening dismissal.

that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland, 466 U.S. at 688, 694). "In other words, a defendant must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting there from." Id. "[C]ounsel inevitably must decide where to focus his or her efforts; not every fact can be double-checked." Peralta v. United States, 597 F.3d 74, 82 (1st Cir. 2010). As Strickland noted, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690.

With respect to Goodman's three sentencing related claims, "In order to satisfy the 'prejudice' prong," Goodman "must establish that 'but for his counsel's deficiency, there is a reasonable probability that he would have received a different sentence.'" Peralta, 597 F.3d at 79 -80 (1st Cir. 2010) (quoting Porter v. McCollum, __U.S. __, __, 130 S.Ct. 447, 453 (2009) (per curiam) and citing Strickland, 466 U.S. at 694 and Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "Although he need not show 'that counsel's deficient conduct more likely than not altered the outcome' of his sentencing proceeding, he must establish 'a probability sufficient to undermine confidence in [that] outcome.'" Id. at 80 (quoting Porter, 130 S.Ct. at 455-56). This Court is familiar with the sentencing issues raised by counsel and the general lay of the landscape given Goodman's criminal history; when a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

*Goodman's Three 28 U.S.C. § 2255 Grounds*

Ground One:

Goodman first complains that his attorney failed to object to his mandatory career offender sentence imposed, in Goodman's view, without adequate consideration of the 18.U.S.C. § 3553(a) factors. He explains that United States v. Booker, 543 U.S. 220 (2005) held that the United States Sentencing Guidelines are advisory but that this Court, when it sentenced Goodman on November 28, 2007, did not think it had discretion in applying 18 U.S.C. § 3553. He indicates that his original base offense level was 34 but that at sentencing he was "subjected to an enhancement without the safeguards offered by the Sixth Amendment." (Sec. 2255 Mem. at 4, Doc. No. 61-1.)

The court record of Goodman's sentencing and the related determination on direct appeal flatly contradicts his assertion that the Court did not appreciate its discretion under Booker and 18 U.S.C. § 3553 and the notion that Goodman's attorney's representation on this issue falls short of the Strickland performance threshold. The record is also fatal to Goodman's showing of Strickland prejudice.

For its part, the United States argued forcefully during sentencing that Goodman's criminal history was severe:

> We … ask the Court to consider the abysmal, frankly, criminal history that this defendant left in his wake prior to committing the instant offenses, a summary of which consumes eight pages of the presentence report, including arrests and pending charges, and they amount to 23 criminal history points which, of course, is about double the number of points needed to have apply the highest criminal history category possible.
> If I'm reading the PSR correctly, Your Honor, today is the 19th time in his adult life this defendant has stood before a Judge waiting to be sentenced, and this does not include the 11 arrests between the ages of 18 and 43, and it does not include the two charges that are currently pending in New York City and Auburn.

> In essence, Your Honor, this defendant has been on what amounts to, sadly, a lifelong crime spree. He has not heeded the message society has been repeatedly trying to send to him, has not heeded or has not heard. Either way, the prior convictions and sentences have not worked to adjust the defendant's behavior.
>
> While the defendant has this extensive history, this is the first time standing before a federal judge waiting to be sentenced, and he is looking at a lot more time than he's used to looking at, and hopefully the defendant will get the message today; his conduct will not be tolerated, cannot be tolerated, and will be dealt with severely. Thank you, Judge.

(Sentencing Tr. at 13-14, Doc. No. 45.)

Defense counsel countered with the following argument towards seeking a departure from the advisory range.

> I'm actually going to argue to the Court that while I'm not suggesting that Vodie has a good history, he doesn't, but I think just the numbers in isolation overstate the seriousness of his prior criminal history.
>
> By way of explanation, let me point out to the Court, for example, he has ten criminal history points that are detailed in paragraphs 39, 40, 41, 43 and 44. Those criminal history points all arise from operating without a license. They all involve a 90-day or a 60-day sentence and those sentences were all concurrent with each other. Basically he had five operating after suspended license convictions. He got a 90-day sentence and that adds ten criminal history points on to his history.
>
> I'm not trying to suggest that operating after suspension, particularly on a repeated basis, isn't something you shouldn't be doing, but I think just to look at the number 23 criminal history points in isolation, it overstates the seriousness of that portion of his history.
>
> He is a career offender based on convictions in paragraphs 29, 32 and 36. Paragraph 29, which is possession with intent to distribute cocaine, he had that in 1993 and he received his longest period of incarceration to date of 18 months.
>
> Paragraph 32 details an assault with a dangerous weapon charge where he was convicted of that offense and received a total sentence of 65 days of incarceration.
>
> Paragraph 36 is another distributing or dispensing cocaine conviction in which he received a two-year suspended sentence, and approximately a year after he was put on probation, he had a probation violation which resulted in him doing a six-month residential placement, I believe.
>
> So basically, except for doing the rehabilitation program, he got no actual period of incarceration for that sentence. Yet those three offenses on to themselves qualify him as a career offender, and significantly add to the potential

4

> for penalty range, the advisory guideline range as calculated by the Probation Department.
>
> As the Court can see from the presentence report, Vodie had a difficult childhood. That's not to excuse his conduct, but basically was the ground laying for a lifelong struggle with substance abuse. Several years ago, frankly, he was able to pull his life together to some degree, only to return to drugs around the time that his mom passed a couple of years ago.
>
> So under the circumstances of his history, if you would to look at an overview and just talk about the number of convictions and the type of convictions and the criminal history points, I suggest to the Court that it does overstate -- and I'm not suggesting that it's not a serious history -- but I believe just the raw numbers overstate his history, Judge.
>
> The penalties that he received for the three offenses that lead him to be a career offender basically gave him 20 months in jail, and now he is looking at -- I believe the word the Government used was "sobering," but certainly the conduct in this case is not so sobering, and certainly the sentence that is proposed under the advisory range is also a sobering sentence.
>
> Under the totality of the circumstances, I would request the Court consider his age of 45 years, the fact that he has had life skills and has had some periods where he has been productive, in departing from the advisory range given the fact that even the bottom of the advisory range is tantamount to a life sentence.

(Id. at 15-17.)

After hearing from Goodman's siblings and Goodman, the Court then explained its reasons for its sentence:

> I find the facts as set out in the revised presentence report with these exceptions. I do not make the findings in paragraph ten concerning obstruction of justice. No evidence has been presented to me to support that allegation, and I do grant acceptance of responsibility since there is no evidence supporting obstruction. Mr. Goodman has otherwise accepted responsibility in terms of admitting the conduct as described in paragraph 11.
>
> The guideline findings are driven by Guideline 4B 1.1 concerning career offenders. Mr. Goodman does qualify as a career offender in light of the three previous convictions that have been identified by counsel and in the presentence report, and the Guideline 4B1.1 instructs me how to calculate the advisory guideline range when someone is both a career offender and has a gun charge, a weapons charge conviction like Mr. Goodman has here under 924(C), and it instructs me to look at what the career offender sentence is, and add to that the mandatory five-year consecutive sentence for the weapons charge, and then to compare that to a table that is set out in (c)(3) and choose the larger.
>
> Here it's been conceded that the statutory maximum for the offense is life. That means that the offense level starts as a 37 for the career offender convictions.

I'm granting acceptance of responsibility so that reduces it three levels to 34. Mr. Goodman has a Category VI Criminal History Category, even if I ignore the convictions that Mr. Vincent has talked about. That means that the guideline range for the career offender conviction is 262 to 327 months.

I then have to add to that the 60-month consecutive sentence, which means the advisory range is 322 to 387 months under 4B1.1 (c)(2)(A). That is higher than the table as provided in (c)(3) and therefore, it controls as the advisory guideline range.

Obviously in reaching this conclusion, I've grouped Counts 1, 2 and 3. I've not provided an increase for role in the offense, contrary to the presentence report paragraph 17. I've already stated the criminal history is 6.

(Id. at 24-25.)   With regards to defense counsel's request for a departure the Court explained:

Attorney Vincent has suggested that I should depart, and I'm not sure whether he means a guideline departure or Booker variance. It doesn't really matter. I will proceed to analyze all of the factors that Booker puts forward, factors under Section 3553(A).

Let me just make a few comments. I'm not here to Judge whether Mr. Goodman is a bad person. I quite believe that his family sincerely loves him and that he has done good things in his life for children, for the church and otherwise, and I do not pass judgment on an entire person.

My role as a federal sentencing Judge, however, is to punish people for the bad things that they have done, and there is no question that the conviction here, with the circumstances of the loaded weapons and the drugs, reflect the seriousness of the offense and they require strict punishment in order to promote respect for the law, to deter others from doing this, to deter Mr. Goodman himself.

It's also clear from the criminal history that Mr. Goodman has amassed that whatever the reason, and I do believe him that the addiction is probably a major cause, but nevertheless, he has been over the course of his life in regular and recurrent trouble with the law, and even if I downplay some of the convictions as Mr. Vincent urged me to do, it does not destroy the conclusion that he is again and again breaking the law and there is, therefore, a need here to protect the public from crimes that he seems unable to stop.

So when I consider the history and characteristics of Mr. Goodman, the nature and circumstances of these offenses, I also have to look at a couple other criteria or factors here, and that is that Congress has specifically passed a statute that is designed to have career offenders, people who recurrently commit crimes, sentenced near the top of the statutory maximum, and that's what these guidelines are designed to do. So as a judge, I'm required to respect that congressional intent.

I also have to avoid unwarranted disparities with other defendants, and the guidelines, of course, are the best way to make sure that people are treated similarly, and when I look at Mr. Goodman's age, it's a very difficult thing because on the one hand, as he says, the advisory guideline sentence here does look like close to a life sentence at age 45, and that I also know that people who

6

are still committing these crimes at age 45 are likely to continue, which is not like the ordinary defendant who commits crimes in their -- males in particular -- in their youth and then get over it as they reach a certain level.

So as I take all of those factors into account, and I recognize the very harsh sentence that the advisory guidelines produce, and I understand the comparisons that people draw to the sentences that state courts impose for certain violent crimes that people think are more serious, but I deal with a federal sentencing regimen that is quite different from what the state sentences are, and so I am not going to depart.

I do find that the Booker factors support a sentence at the bottom of the advisory guideline range, and that is what I'm going to impose here is a sentence of 322 months.

(Id. at 26-29.)

The Booker concern seems to have been the principal focus of Goodman's direct appeal. The First Circuit addressed this claim as follows:

> Goodman focuses particularly on his allegations that the court felt itself bound by the career offender guideline to sentence him near the top of the statutory maximum, in violation of United States v. Booker, 543 U.S. 220 (2005). His sole basis for this claim is the court's reference to being "required to respect …congressional intent" in considering the career offender guideline. Looking at the full context of the sentencing statement, however, it is clear that the district court did not consider itself bound by the guideline but was rather properly following the 18 U.S.C. § 3553(a) factors, including the need to consider policy statements laid out in the guidelines, statements which include reference to congressional intent set out in the relevant statutes. The court was right to consider this factor as part of the § 3553(a) analysis. See Kimbrough v. United States, [552 U.S. 85 (2007)] ("while [§ 3553(a)] still requires a court to give respectful consideration to the Guidelines, …, Booker permits the court to tailor the sentence in light of other statutory concerns" (emphasis supplied). The court repeatedly referenced the advisory nature of the guidelines and did so in the specific context of the application of the career offender guideline. There is no indication that the court felt the career offender guideline restricted its discretion in sentencing.

(Mar. 26, 2009, Judgment at 1-2, Doc. No. 50.)

Not only was Booker decided well before the sentencing but this Court was intimately aware with that shift in law due to its adjudication in the companion case. United States v. Fanfan, Crim. No. 03-47 (D. Me.). Goodman seems to believe that counsel did not do enough to

7

apprise the court of the extent of its 18 U.S.C. § 3553 sentencing discretion. The sentencing record patently contradicts Goodman's assertion that his attorney did not adequately engage with the Court in an effort to realize a sentence below the 322-month threshold. Furthermore, the First Circuit's conclusion that this Court appropriately applied Booker-based and § 3553 factors forecloses a finding of prejudice under Strickland.

Ground Two:

Goodman's second 28 U.S.C. § 2255 ground is that his attorney failed to obtain documentation that would meet the Shepard v. United States, 544 U.S. 13 (2005) requirement apropos a state court conviction with regards to which he served a residential treatment program sentence in relationship to a probation violation and the state court dismissed "the charges" after he completed the treatment program. In his memorandum Goodman points out that his attorney addressed the conviction in question as follows: "Paragraph 36 is another distributing or dispensing cocaine conviction in which he received a two-year suspended sentence, and approximately a year after he was put on probation, he had a probation violation which resulted in him doing a six-month residential placement, I believe." (Sentencing Tr. at 16:7-12. Doc. No. 45.) Goodman emphasizes that his attorney was only able to articulate what he believed about this conviction. (Sec. 2255 Mem. at 6.) He states that in "the instant case, without any Shepard-Approved Document to demonstrate whether the state district judge dismissed once [Goodman] completed the residential treatment program or if it was suspended," his attorney was not adequately representing him. (Id.) The only specifics Goodman gives are that he pled not guilty and the state judge accepted this plea, ordered the residential treatment program, and dismissed the charges when Goodman completed this program on February 15, 2001. (Id. at 6-7.) Goodman also requests that this court hold the § 2255 in abeyance pending the disposition of a

28 U.S.C. § 2254 proceeding -- either already filed or anticipated, it is not clear -- presumably challenging this conviction. (Id. at 7.)

The relevant paragraph of the Revised Pre-sentence Investigation Report (PSR) reads with respect to his December 1, 2000, drug offense conviction:

> Court records indicate that the defendant was represented by counsel. The defendant was also charged with Drug Violation Near School, which was dismissed. On December 28, 2001, the defendant entered a guilty plea to a probation violation but the judge rejected the guilty plea and ordered the defendant to complete a 6 month residential treatment facility, [with] the Salvation Army. This conviction is used as a predicate offense in determining the defendant's career offender status.

(PSR ¶ 36.)

With respect to his base offense level of 40 and Goodman's career offender status, the report stated:

> Chapter Four Enhancements: As specified in Part B (Criminal History) below, the defendant has twice been convicted of Controlled Substance offenses ( paragraphs 29 and 36) and two convictions for crimes of violence (paragraphs $30^2$ and 32). Since the instant offense involves distribution of cocaine base and the defendant was 18 years or older at the time of its commission, the defendant is a career offender within the meaning of U.S.S.G. §4B1.1. The offense level determined under U.S.S.G. §4B1.1 is 37. However, pursuant to U.S.S.G. §4B1.1, Application No.3(B), the above calculated base offense is higher and will be used in this case. In addition, pursuant to U.S.S.G. §4B1.1(c)(3), the defendant's resulting guideline range, because he is determined to be a career offender and the case involves a 18 U.S.C. 924(c) conviction, would be 360 to Life.

(Id. ¶ 22.)

Under the Criminal History Computation section the report states:

> Because the defendant has one prior conviction for a felony crime of violence (paragraph 32), and two prior convictions for felony controlled substance offenses (paragraphs 29 and 36), he is considered a Career Offender. Pursuant to U.S.S.G. §4B1.1, his criminal history category must be Category VI.

---

[2] Paragraph 30 is an escape of prisoner or "Sex/Drug Person" conviction and that the preparer was still awaiting police reports. It was not mentioned in the section on criminal history computation in setting forth his prior convictions.

9

(Id. ¶ 50.)

The report arrived at a minimum sentence of 420 months and a maximum sentence of life. (Id. ¶ 76) ("Pursuant to U.S.S.G. Chapter 5, Part A, based on a total offense level of 40 and a criminal history category of VI, the guideline range for imprisonment is 360 to life. However, pursuant to U.S.S.G. §4B1.1(c)(2)(A), the guideline range that results from the mandatory minimum 924(c) charge (60 months) is added to the guideline range for the other counts. The resulting guideline range is 420 months to life."). The PSR does not reflect any objection by the defense as to these paragraphs.

The record, thus, is that the conviction Goodman now targets was one of his predicate offenses for his career offender status. The problem for Goodman in the context of this 28 U.S.C. § 2255 proceeding, however, is that he has not begun to articulate why this conviction is open to collateral attack; for instance, he does not argue that, despite the PSR indication that he was represented by counsel during this proceeding, he was not. Beyond Goodman's incantation of Shepard, he does not explain what document counsel had reason to know existed that might support such a challenge at the time of sentencing. As for the referenced 28 U.S.C. § 2254 challenge, Goodman has not filed anything that suggests that he has initiated these efforts or even explained his grounds for the challenge that could lead to that conviction actually being vacated or the reason for his delay in seeking state court review once he realized that this conviction was going to be used as a predicate offense. See generally Johnson v. United States, 544 U.S. 295 (2005); Daniels v. United States, 532 U.S.C. 374 (2001); see, e.g, Hirman v. United States, 613 F.3d 773, 776 (8th Cir. 2010) ("Although Hirman correctly states the law, it has no bearing on the outcome of his appeal, as Hirman's state felony convictions have not been

vacated. Instead, his felony convictions are merely 'deemed to be for ... misdemeanor[s]' by the Minnesota courts. Minn.Stat. § 609.13, subdiv. 1(2)."); Desvarieux v. United States, Crim. No. 04-80-P-H, Civ. No. 05-221-P-H, 2006 WL 1208027, 2 (D. Me. 2006) (recommended decision) ("The Johnson holding gave a federal prisoner, who could not overturn a state court conviction within the ¶ 6(1) year, the leeway to pursue § 2255 relief under ¶ 6(4) on the grounds that the efforts in state court were diligently pursued once the defendant knew that the state court convictions subjected him or her to an enhanced federal conviction. By jumping out of the gate in an effort to meet the ¶ 6(1) deadline Desvarieux may now have spent his first-time § 2255 round and could well be subject to the provisions of § 2255 governing second or successive motions should he succeed in actually obtaining the relief he is supposedly seeking in the state courts at this time."). This is not a case in which it would be appropriate to hold this action in abeyance. See Wall v. United States, Nos. Civ. 05-53-P-C, CRIM. 00-77-P-C, CRIM. 00-78-P-C, 2005 WL 2429893, 2 -4 (D. Me. 2005) (recommended decision).

Ground Three:

Goodman's final 28 U.S.C. § 2255 claim is that his attorney failed to raise a challenge under the "except clause" of 18 U.S.C. § 924(c)(1)(A). He highlights that the First Circuit Court of Appeals indicated in its judgment that he had waived the issue because he never raised it at sentencing or in his initial brief to the First Circuit. In his memorandum Goodman maintains that he told counsel several times to object per the "except clause" of § 924(c)(1)(A) and insists that there "is no sound strategic reason why Counsel fail[ed] to raise this issue at sentencing or on appeal" in view of the Second Circuit's United States v. Whitley, 529 F.3d 150 (2d Cir. 2008).

In its judgment on Goodman's direct appeal, the First Circuit explained vis-à-vis Goodman's § 924(c)(1)(A) challenge:

> By not raising this issue below or in his primary brief, Goodman has waived it. Sandstrom v. Chemlawn Corp., 904 F.2d 83, 86 (1st Cir. 1990). Even were is not waived the argument is foreclosed by this court's recent decision in United States v. Parker, 549 F.3d 5, 11 (1st Cir. 2008) (rejecting a similar Whitley-based argument from a defendant also subject to a longer mandatory minimum for a drug offense and distinguishing Whitley because the two mandatory minimums there involved double-counting the use of the same firearm, a problem not at issue here).

(Mar. 26, 2009, Judgment at 3, Doc. No. 50.) Counsel will not be considered to have rendered constitutionally deficient performance for not making an argument foreclosed by First Circuit precedent, see Taveras v. United States, 432 F.Supp.2d 140, 143 (D. Me. 2006) (citing Campbell v. United States, 108 Fed.Appx. 1, 2004 WL 1888604, *3 (1st Cir.2004) quoting United States v. Campbell, 268 F.3d 1, 7, n. 7 (1st Cir.2001)), and the First Circuit has made it clear in Goodman's own case that this argument remains foreclosed in this circuit.[3]

## Conclusion

For the reasons stated above, I recommend that the Court deny Goodman 28 U.S.C. § 2255 relief. I further recommend that a certificate of appealability should not issue in the event Goodman files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

---

[3] The United States Supreme Court has granted (and consolidated) petitions for certiorari review on at least two appeals raising this issue. See Gould v. United States, No. 09-7073, 130 S. Ct. 1283 (Jan. 25, 2010); Abbot v. United States, No. 09-479, 130 S. Ct. 1284 (Jan. 25, 2010). These cases were argued on October 4, 2010.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 18, 2010.