**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Docket No. 2:07-cr-00028-NT |
| | ) |
| VODIE GOODMAN, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Before me is Defendant Vodie Goodman's *pro se* motion for compassionate release ("**Motion**"). Mot. for Reduction in Sentence Due to COVID-19 (Compassionate Release) ("**Def.'s Mot.**") (ECF No. 115-1). For the reasons stated below, Mr. Goodman's Motion is **DENIED**.

**PROCEDURAL BACKGROUND**

Mr. Goodman is sixty years old and currently imprisoned at FCI Schuylkill. On November 28, 2007, Judge Hornby sentenced him to 322 months in prison for crack and cocaine powder trafficking as well as for being a felon in possession of a firearm and using a firearm in connection with a federal drug trafficking crime. Judgment (ECF No. 37). On April 23, 2019, Judge Hornby lowered Mr. Goodman's sentence to 262 months pursuant to the First Step Act (ECF No. 93).

On September 3, 2020, Judge Hornby denied Mr. Goodman's first motion for compassionate release (ECF No. 100), which Mr. Goodman largely based on the COVID-19 pandemic. Order on Mot. for Compassionate Release ("**2020 Order**") (ECF No. 101). This July, I denied a separate motion for compassionate release that Mr.

Goodman filed after the Supreme Court's decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022). Order Denying Mot. to Reduce Sentence (ECF No. 104).

On September 1, 2022, Mr. Goodman filed another motion for compassionate release (ECF No. 109) and a motion to appoint counsel (ECF No. 110). On October 11, I issued an Order to Show Cause because the motions did not state whether Mr. Goodman had submitted a request to the Warden of the Bureau of Prisons ("**BOP**") and either exhausted his administrative remedies or waited 30 days before filing for compassionate release as 18 U.S.C. § 3582(c)(1)(A) requires. Order to Show Cause 1–2 (ECF No. 111). Mr. Goodman responded on October 20, explaining that someone who was assisting him with the motion sent it out for him before it was ready and asking the court to waive the exhaustion requirement. Resp. to Order to Show Cause (ECF No. 112). Because the exhaustion requirement is a mandatory claims-processing rule, I dismissed the motions without prejudice. Order on Mot. for Compassionate Release (ECF No. 113).

In mid-November, Mr. Goodman sent proof that the Warden denied his request for compassionate release (ECF No. 114) and filed the instant Motion along with a memorandum in support. Mem. in Supp. of Mot. for Reduction in Sentence ("**Def.'s Mem.**") (ECF No. 115). The Motion largely replicates Mr. Goodman's 2020 motion and its supporting memorandum seems to be a copy of the 2020 memorandum with an updated signature page. *Compare* Mot. for Reduction in Sentence ("**2020 Mot.**") (ECF No. 100), *with* Def.'s Mem., *and* Def.'s Mot. Regardless, I treat the most recent filings as a new motion for compassionate release.

As of today, Mr. Goodman has served over fifteen years of his sentence. According to the Motion, he now has a projected release date of 2025. Def.'s Mot. 2. Mr. Goodman asserts that his rehabilitation, his increased risk of suffering severe complications if he contracts COVID-19, and the BOP's inadequate response to the virus constitute extraordinary and compelling reasons for release. Def.'s Mem. 3–6; Def.'s Mot. 2–4.

## LEGAL STANDARD

I may reduce a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)(i) upon a prisoner's motion. Before a prisoner can seek compassionate release in the courts, he must first exhaust his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Ruvalcaba*, 26 F.4th 14, 18 (1st Cir. 2022). If the exhaustion requirement is met, to grant the motion, I must also find that the defendant has presented an "extraordinary and compelling" reason warranting relief based on a holistic review of his circumstances[1] and that the reduction is consistent with the

---

[1] The compassionate release statute does not itself define what constitutes an "extraordinary and compelling reason[ ]" justifying a sentence modification. *See United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021); 18 U.S.C. § 3582(c). In 2018, Congress enacted the First Step Act which, among other things, amended section 3582 to allow inmates to bring motions for modification of sentence directly to the district courts. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018) (codified in part at 18 U.S.C. § 3582(c)(1)(A)). Since then, the United States Sentencing Commission has not updated its Commentary to its policy statement on sentence reductions that explains what "extraordinary and compelling reasons" are. U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1 (U.S. Sent'g Comm'n 2004); *see United States v. Ruvalcaba*, 26 F.4th 14, 20 (1st Cir. 2022). As such, "[w]hen adjudicating prisoner-initiated motions for compassionate release [district courts] have discretion, unconstrained by any policy statement currently in effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to warrant compassionate release." *Ruvalcaba*, 26 F.4th at 23. This means that "extraordinary and compelling reasons" is an expansive concept, and I may consider "any complex of circumstances raised by a defendant." *Id.* at 28*; see also id.* at 25 (noting that rehabilitation is Congress's only "explicit limitation on what may comprise an extraordinary and compelling reason"); *United States v. Trenkler*, 47 F.4th 42, 49 (1st Cir. 2022) (describing the "holistic, any-complex-of-circumstances approach").

Sentencing Commission's policy statements and any applicable factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. §§ 3582(a), (c)(1)(A); *Ruvalcaba*, 26 F.4th at 18–19. The section 3553(a) factors include the need for the sentence "to protect the public from further crimes of the defendant." 18 U.S.C. 3553(a)(2)(C).

While I review the Defendant's Motion holistically and consider any "complex of circumstances" he has raised, *see United States v. Trenkler*, 47 F.4th 42, 49–50 (1st Cir. 2022), this does not mean that I have unbounded discretion in evaluating whether the Defendant has put forward an extraordinary and compelling reason justifying his release. A defendant's asserted justification for why a sentence reduction is warranted must truly be "extraordinary" and "compelling." *See Ruvalcaba*, 26 F.4th at 23. A reason is "extraordinary" if it "is beyond the mine-run either in fact or in degree." *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021). Meanwhile, a "compelling" reason is one "that is both powerful and convincing." *Id.* at 567.

## DISCUSSION

### I. Extraordinary and Compelling Reasons

Mr. Goodman seeks compassionate release because of (1) his heightened risk of suffering from severe COVID-19 complications due to the facts that he has asthma, obesity, and diabetes, is a smoker, and is a Black male; (2) the ineffective response of the BOP and FCI Schuylkill to COVID-19; and (3) his rehabilitation. I address these proposed reasons in order and then consider them holistically based on the Defendant's individual circumstances.

4

### A. Mr. Goodman's Heightened Risk of Severe COVID-19 Complications

Mr. Goodman seeks a sentence reduction because he has asthma, obesity, and diabetes, in addition to being Black and a smoker, putting him at heightened risk of severe illness from COVID-19. Def.'s Mem. 3–4. According to the CDC, people with certain conditions are more likely to get very sick from COVID-19, including smokers and those with obesity, moderate to severe asthma, and Type 2 diabetes. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 27, 2023). Mr. Goodman's medical records show that he has these conditions. *See* Medical Records 3, 10, 13 (ECF No. 115-4). Therefore, he is at a heightened risk of complications from COVID-19, which weighs in favor of releasing him.[2]

At the same time, this information was before Judge Hornby when he denied Mr. Goodman's 2020 Motion, which weighs against a sentence reduction. 2020 Order 2. Additionally, Mr. Goodman has since been vaccinated and boosted against COVID-19. Medical Records 91. This Court has found that getting vaccinated greatly reduces

---

[2] Mr. Goodman also says that he is at higher risk of serious COVID-19 illness because of his race. Mem. in Supp. of Mot. for Reduction in Sentence ("**Def.'s Mem.**") 3 (ECF No. 115). The CDC's statistics show that Black people are more likely to contract the virus, be hospitalized, and die than white people. *Risk for COVID-19 Infection, Hospitalization, and Death By Race/Ethnicity*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (last visited Jan 26, 2023). However, the CDC notes that race acts as a "risk marker[ ] for other underlying conditions that affect health, including socioeconomic status, access to health care, and exposure to the virus related to occupation, e.g., frontline, essential, and critical infrastructure workers." *Id.* While this "presents a troubling picture of the impact systemic racism has had on public health in minority communities, it does not suggest that Black individuals are otherwise inherently predisposed to COVID-19 infection and complications." *United States v. Martin*, 2:18-cr-00124-JDL-1, 2020 WL 5752850, at *3 (D. Me. Sept. 25, 2020). Because Mr. Goodman "is currently incarcerated and should have ready access to healthcare if he needs it," I do not find that his race places him at an increased risk of severe illness from COVID-19. *See id.*

an inmate's risk of serious complications from the virus. *United States v. Nygren*, No. 1:16-cr-00106-JAW, 2021 WL 1928541, at *7 (D. Me. May 13, 2021). Considering that Judge Hornby denied Mr. Goodman's previous motion for compassionate release in 2020, before the availability of the vaccine, Mr. Goodman's risks from COVID-19 are lower this time around. This cuts against a finding that his situation has become extraordinary and compelling. *See id.*

### B. The BOP's COVID Response

Mr. Goodman further argues that the BOP and FCI Schuylkill are failing to properly respond to the COVID-19, which puts him in danger of contracting it. Def.'s Mem. 4–6; Def.'s Mot. 2. He also argues that the BOP's Action Plan has been ineffective at stopping the spread of COVID-19 and he would be safer isolating at his family's home. Def.'s Mem. 5–6.

While I sympathize with the challenges Mr. Goodman has faced at FCI Schuylkill during the pandemic, conditions have improved since Judge Hornby denied Mr. Goodman's 2020 motion for compassionate release. *See* 2020 Mot 2. At that time, the prison was under total lockdown. 2020 Mot. 10. Today, the facility is operating at Level 1, which means most programs have resumed without modifications. *Modified Operational Levels*, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 27, 2023); *COVID-19 Modified Operations Plan & Matrix*, BOP, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Jan. 27, 2023). FCI Schuylkill is currently reporting two active inmate infections,

6

compared to the one active inmate case when Judge Hornby denied the 2020 motion.[3] *Covid-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 27, 2023); 2020 Order 2. In addition, when Judge Hornby denied the 2020 motion for compassionate release, there were no vaccinations; today 169 staff members and 1,258 inmates have been vaccinated, which further shows that the situation has improved. *Covid Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/index.jsp (last visited Jan. 27, 2023); *see* 2020 Order 2. Given that conditions have improved since Judge Hornby found that Mr. Goodman's circumstances were not extraordinary and compelling in 2020, this weighs against finding that his current circumstances are extraordinary or compelling.

C. **Rehabilitation**

Finally, Mr. Goodman argues that his circumstances are extraordinary and compelling due to his rehabilitation. Mr. Goodman writes that he "completed The Challenge Program in Addition to the RDAP; Drug Education; Leather Crafts; Health Services Course; Drug Abuse Program; OSHA Safety Course; Electronic Law Library Training[;] Mutual Funds Course; American History Course; Dress to Success Class; Basic Job Interview Class; Business Etiquet[t]e Class[;] Obtained His GED." Def.'s

---

[3]   Mr. Goodman's motion also states that although there were no confirmed cases at FCI Schuylkill around the time he filed the motion, the BOP's numbers cannot be trusted because they were not testing. Def.'s Mem. 4. In support of this, Mr. Goodman cites to sources from the beginning of the pandemic. *See* Def.'s Mem. 4. The testing situation in BOP facilities has improved in the past years, with over one million tests being administered overall and 1,069 current inmates at FCI Schulyskill who have been tested. *COVID-19 Inmate Test Information*, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 27, 2023).

Mot. 2. He also notes that he is a follow-up member of the RDAP and is a mentor. Def.'s Mot. 4. Mr. Goodman is currently working with UNICOR Recycling and has maintained clear conduct since his last program review. Individualized Needs Plan (ECF No. 115-3).

I note that rehabilitation alone is not a sufficient basis for finding that extraordinary and compelling circumstances exist, but I consider it as part of Mr. Goodman's complex of circumstances. *See Ruvalcaba*, 26 F.4th at 25 (citing 28 U.S.C. § 994(t)). I commend Mr. Goodman on the progress he has made, but there is still room for growth. For example, his needs plan still recommends that he complete anger management training. Individualized Needs Plan 2. Although he has taken many skills classes and engaged in productive work, not much has changed since Judge Hornby considered his circumstances in 2020 and found that they did not meet the high extraordinary and compelling bar. *Compare* Individualized Needs Plan, *with* Req. for Administrative Remedy and Supporting Docs. 5 (ECF No. 100-3). To meet that bar, the rehabilitation must be beyond the mine-run in fact or degree, and Mr. Goodman has not shown that his is. *See United States v. Sepulveda*, 34 F.4th 71, 76–77 (1st Cir. 2022) (finding that prisoner's rehabilitative efforts over twenty-five years were not by themselves an extraordinary and compelling reason for granting compassionate release); *United States v. Stone*, No. 1:08-cr-00006-JAW, 2021 WL 5146183, at *8 (D. Me. Nov. 4, 2021) (finding rehabilitative efforts including an 8000-hour electrician program, six years of experience in an electrical shop, HVAC

training, and leather crafting classes were not by themselves extraordinary and compelling).

Mr. Goodman's circumstances are not extraordinary and compelling when considered in totality, either. He has presented almost the same motion as he did in 2020, but conditions in the prisons have only improved since then and Mr. Goodman has not made significant rehabilitative progress. Like Judge Hornby, "I conclude that the circumstances here do not present extraordinary and compelling reasons to reduce [Mr.] Goodman's sentence." 2020 Order 3.

## II.   3553(a) Factors

Even were I to find that Mr. Goodman's circumstances were extraordinary and compelling, I would not grant his Motion because it would be inconsistent with the § 3553(a) factors, which include protecting the public. In 2020, Judge Hornby found that "his recidivism risk poses a significant danger to the community." 2020 Order 3. Judge Hornby quoted the following excerpt from the sentencing transcript:

> there is no question that the conviction here, with the circumstances of the loaded weapons and the drugs, reflect the seriousness of the offense and they require strict punishment in order to promote respect for the law, to deter others from doing this, to deter Mr. Goodman himself.
>
> . . . [H]e has been over the course of his life in regular and recurrent trouble with the law, and even if I downplay some of the convictions as [his defense counsel] urged me to do, it does not destroy the conclusion that he is again and again breaking the law and there is, therefore, a need here to protect the public from crimes that he seems unable to stop.

2020 Order 3 (quoting Sent. Tr. at 27 (ECF No. 45)).

Mr. Goodman again argues that he is not a danger to the community because he did not use the guns he was found with to threaten or intimidate anyone, and "it's

9

a mere case of a paranoid addict believing he needs personal protection." Def.'s Mot. 4. Like Judge Hornby, "I am not persuaded this mitigates the danger." 2020 Order 3 n.5.

Faced with almost the same motion and record that Judge Hornby considered two-and-a-half years ago, I do not find that there has been a significant enough change in the danger posed to the public to grant a sentence reduction.

## CONCLUSION

For the reasons stated above, Mr. Goodman's motion for compassionate release (ECF No. 115-1) is **DENIED**.

SO ORDERED.

/s/ Nancy Torresen  
United States District Judge

Dated: January 27, 2023